## COMMONWEALTH *vs.* SAMUEL CHURCHILL.

The simple repeal of a repealing statute revives the original statute.

The statute of 1840, *c*. 1, by repealing *St*. 1838, *c*. 157, revived so much of chapter **47th** of the revised statutes as was repealed by the latter statute.

Under the provision in the constitution of the Commonwealth, *c*. vi. § 6, that all laws theretofore adopted, used and approved, in the colony, province or state, and usually practised on in the courts of law, should remain and be in full force, until altered or repealed by the legislature, it is not necessary, in order to prove that a principle or rule of the common law had been adopted, &c., to show that such principle or rule had been adjudicated before that constitution went into operation: The court rely on usage and tradition, and the well known repositories of legal learning — works of approved authority — to learn what are the rules of the common law; and it is to these sources, that the above provision in the constitution refers.

It is not necessary, in an indictment on § 2 of *c*. 47 of the revised statutes to aver that the quantity of liquor, alleged to have been sold by the defendant, was less than twenty-eight gallons.

After a conviction on an indictment charging the defendant with selling *spiritous* liquor, to be used in his house, " without being duly licensed as an innholder or common victualler," a new trial will not be granted for the purpose of allowing him to give in evidence a license, which he had omitted to produce, to sell *fermented* liquor, and thus raise a question as to the mere form of the indictment.

AT the last September term of the court of common pleas, the defendant was convicted on four counts in an indictment, the first of which alleged that he, " at Stoughton in said county of Norfolk, on the 16th day of March last past, did sell to one ——— one glass of brandy to be by him the said ——— then and there used, consumed and drank, in the dwellinghouse there situate of him the said Samuel, he the said Samuel not being then and there duly licensed, according to law, to be an innholder or common victualler ; against the peace, &c. and contrary to the statute in such case made and provided." There were five other counts similar to the first, except that different kinds of

spiritous liquor were alleged to have been sold to five different persons on several different days, to wit, on the 17th, 18th, 19th, 20th and 21st of March, 1840. On two of the counts the defendant was acquitted.

The defendant filed exceptions to the ruling of *Strong*, J. before whom the trial was had : " 1. Because the court instructed the jury that the 2d and 3d sections of *c.* 47 of the revised statutes, on which the indictment is founded, are binding and valid, when the defendant contends that they are unconstitutional and void. 2. Because the court instructed the jury that those sections were still in force as law, when the defendant contends that they are repealed by subsequent legislative enactments."

*Hallett*, for the defendant, did not deny that it is a *general* principle of the common law of England, that the repeal of a repealing statute revives the preëxisting statute ; but he contended that the case at bar came within the *exceptions* to this doctrine. The 2d and 3d sections of *c.* 47 of the revised statutes were repealed by implication, by *St.* 1838, *c.* 157, on the ground that new provisions on the subject were introduced into the latter statute, inconsistent with those of the former. *Commonwealth* v. *Kimball*, 21 Pick. 373. The 4th section of the latter statute, expressly repealing all laws inconsistent therewith, was therefore mere surplusage, for the purposes of the case at bar ; as it was not necessary to the repeal of those sections of the re vised statutes on-which this indictment is founded. The repeal of a statute which, by making new provisions different from those of the common law, repeals that law, does not revive the common law. *Commonwealth* v. *Cooley*, 10 Pick. 37. *Commonwealth* v. *Marshall*, 11 Pick. 350. The case of *Common‧ wealth* v. *Mott*, 21 Pick. 492, decides only that an express specific repeal of a repealing act revives the preëxisting act ; not that a statute, which, as in the case at bar, is repealed by implication from the provisions of another statute, is revived by a re peal of the latter.

A repealed statute does not revive by the expiration of the time to which the operation of the repealing statute is limited. *Warren* v *Windle*, 3 East, 205. If, therefore, *St.* 1838,

c. 157, had been limited to two years, the sections of the re-vised statutes on which this indictment is framed, would not have risen into force. Is there any difference between an original limitation of a statute to two years, and a repeal of it at the end of two years ?

The legislature, it is well known, could not have passed an act directly reviving the Rev. Sts. c. 47. A majority could not have been obtained for such a measure. Hence it is to be inferred that it was not intended to revive that chapter.

By the constitution of the Commonwealth, c. vi. § 6, it is necessary that it should be shown that the principle of the common law, that a repeal of a repealing statute revives the first statute, had been adopted, used and practised on in the courts of Massachusetts before that constitution was adopted. No such usage or practice can be shown; and the principle is, therefore, not a part of our law. See *Commonwealth* v. *Warren*, 6 Mass. 72.

*Austin*, (Attorney General,) for the Commonwealth. The *St.* of 1838, c. 157, repealed Rev. Sts. c. 47, §§ 1 & 2, not only by implication, but also expressly by the clause repealing all laws inconsistent, &c. The former statute is expressly and simply repealed, without more, by *St.* 1840, c. 1. Such repeal generally reënacts the law which was in force anterior to the statute thereby repealed. Thus *St.* 1780, c. 5, establishing the governor's salary at £1100, was repealed by *St.* 1788, c. 57, which reduced his salary to £800, but was revived by *St.* 1818, c. 88, which merely repealed the intermediate statute.

But when the first repealing statute substitutes a new system, for a limited period, or when the second repealing statute substitutes a new system, the law, which was in force anterior to both statutes, is not revived. This distinction is an answer to the cases cited by the defendant's counsel. 6 Dane Ab. 589 2 Inst. 685. 1 Bl. Com. 90. 3 Bing. 497. 2 Dwarris on Statutes, 675, 676. Bac. Ab. Statute, D. *Palmer* v. *Moore*, 9 Barn. & Cres. 754, *note*. *Wheeler* v. *Roberts*, 7 Cow. 536. [See also 1 Stephen's Com. 77.]

These are principles of the common law, by which this case is

to be decided. In *Barry* v. *Mandell*, 10 Johns. 579, in the New York court of errors, Van Buren, Senator, laid down this sound rule : " In the construction of all statutes, courts are, and ought to be, guided by the rules of construction furnished by the common law."

The provision of the constitution respecting " laws heretofore adopted," &c. refers not to those points of law only which had been already adjudicated, but to all *systems* of law, adopted, used, &c. viz. the common law, and those parts of the canon and civil law, on which our probate systems, &c. are founded, so far as consistent with our institutions.

SHAW, C. J. It appears by the record that the defendant was indicted for selling spiritous liquors without license, on the 16th day of March last, and at several times afterwards, and that upon a trial of the indictment, in the court of common pleas, he was convicted. Two exceptions were taken to the directions and opinion of that court in matter of law, upon which the case has been brought before this court, pursuant to the statute. These exceptions were as follows : 1. That the 2d and 3d sections of the 47th chapter of the revised statutes, upon which this prosecution is founded, are unconstitutional and void. 2. Because the court instructed the jury that these sections were in force as law, at the time when the acts charged as offences were alleged to be done ; whereas the defendant contended that they were repealed by a subsequent act of the legislature. Upon the first no argument has been offered, and it does not seem to be insisted on. The second depends upon the question, whether the statute of 1840, *c.* 1, passed on the 11th of February, 1840, and which went into operation in 30 days from its passage, to wit, 13th March, 1840, simply repealing the statute of 1838, *c.* 157, did, by its legal operation, revive the 2d and 3d sections of the 47th chapter of the revised statutes. If it did, the case of the defendant was within them ; the acts all being charged to have been done after the 13th of March last, and the acts themselves being made punishable by those provisions of the revised statutes.

The *St.* of 1838, *c.* 157, declared that all laws inconsistent with

the provisions of that act were repealed.   It became necessary, therefore, to examine the preëxisting laws, to ascertain what provisions were inconsistent.   Having found that, the rule was established for determining what was repealed and what remained in force.   The *St.* of 1838, both in its title and enactments, was a law regulating the sale of spiritous liquors, but did not pur-port to make regulations for licensed houses.   It has, therefore, been determined, upon the construction of that statute, that in this respect the *St.* of 1838 was not inconsistent with the first section of Rev. Sts. *c.* 47, and of course did not repeal it Both could well stand together.   But as it made other and dif-ferent regulations upon the subject of the sale of liquors, incon-sistent with the 2d and 3d sections of the same chapter, it was inconsistent with those sections, and therefore, by force of its express terms, repealed those sections.   *Commonwealth* v. *Kimball*, 21 Pick. 373.

If the court were right in this construction, then those sections were repealed, by the express provision of the statute, as effect-ually as if the words of the repealing clause had expressly men-tioned those two sections.   It was done by using terms of description, which, when applied, have the same effect as any other terms identifying the sections or provisions to be repealed. If the court were not correct in their construction of *St.* 1838, in holding that it repealed the 2d and 3d sections of the 47th chapter of the revised statutes, then those provisions have never been repealed, because no other statute affects them ; and then it follows that they have been in force ever since their enact-ment.   Supposing they were repealed by *St.* 1838, then the question recurs, whether the simple repeal of that repealing act, making no new provisions on the subject, revives the preëxisting act.

It has not been denied that, as a general rule in the construc-tion of statutes, the repeal of a repealing act revives the preëx-isting statute.   It was supposed, however, in the argument, that a different opinion was expressed in the cases of *Common-wealth* v. *Cooley*, 10 Pick. 37, and *Commonwealth* v. *Marshall*, 11 Pick 350.   In the first of these cases, it was held that

*St.* 1814, *c.* 175, repealed the common law, by implication, by acting on the whole subject. The act of 1830, *c.* 57, repealed the act of 1814, but substituted a series of new provisions on the same subject. In the latter case, a doubt was expressed whether this revived the preëxisting rules of the common law. The decision of that point, however, was not necessary to the decision of the case then before the court ; because although *St.* 1830 did repeal *St.* 1814, it was not a simple repeal, but again substituted other and new provisions on the same subject But in the case now before us, there is a simple repeal, which annihilates the statute of 1838, and does nothing more. It leaves the law as it would have stood, had the act of 1838 not been passed. Of course, it revives that part of the revised statutes which had been repealed.

The case of *Warren* v. *Windle*, 3 East, 205, was decided upon the ground that though the new substituted provisions in a repealing act are temporary, yet the repeal itself was permanent, and therefore the preëxisting law did not revive by the expiration of the time to which the new enactments were limited.

It is conceded to be a maxim of the common law, applicable to the construction of statutes, that the simple repeal of a repealing law, not substituting other provisions in place of those repealed, revives the preëxisting law. As a maxim of the common law, it was in force here when the constitution of the Commonwealth was adopted. By that constitution, it was declared that " all the laws, which have heretofore been adopted, used and approved in the colony, province, or state of Massachusetts Bay, and usually practised on in the courts of law, shall still remain and be in full force, until altered or repealed by the legislature ; such parts only excepted as are repugnant to the rights and liberties contained in this constitution." This constitution has been construed as adopting the great body of the common law with those statutes made before the emigration of our ancestors, which were made in amendment of the common law, so far as these rules and principles were applicable to our condition and form of government. *Commonwealth* v. *Leach*, 1 Mass 59. *Commonwealth* v. *Knowlton*, 2 Mass. 534.

But it was contended, at the argument, that under this pro vision no principle or rule of the common law could be regarded as adopted, unless it could be shown affirmatively that it had been adjudicated before the revolution. But we apprehend this would be much too narrow a construction. Before the revolution, we had no regular reports of judicial decisions ; and the most familiar rules and principles of law — those which lie at the foundation of our civil and social rights — could not be so proved. No : We rely on usage and tradition, and the well known repositories of legal learning, works of approved authority, to learn what are the rules of the common law ; and we have no doubt that these were the great sources to which the above pregnant provision of our constitution refers.

Taking it then as well established that the rules and maxims of the common law, referred to in the constitution, were those which our ancestors brought with them, and which had been, to some extent, modified and adapted to our condition by the legislative jurisprudence of the colonial and provincial governments, it follows that these rules and principles were regarded as binding both upon legislators and judges in their respective departments. A part of this system are the well known rules of construction for the expounding of statutes, which are as much a part of every statute as its text. These are presumed to be known and kept in view by the legislature in framing the statute ; and they must be alike regarded by judges in expounding it.

It was further insisted in the argument, that the legislature could not have intended, when they repealed one license law, in effect to reëstablish another. But their intentions must be ascertained by their acts alone, and not by evidence *aliunde.* We cannot possibly know the intentions of members of the legislature : It is the will of the aggregate body, as expressed in the statutes which they pass, which can be regarded as having the force of law. Any different construction would lead to the greatest confusion and uncertainty. The legislature are presumed to understand and intend all consequences of their own measures ; and the only safe course is for courts of justice to expound the intentions of the legislature by their acts, and those acts construed by known and established rules of construction

On the whole, the court are of opinion that the simple repeal of *St.* 1838, *c.* 157, by that of 1840, *c.* 1, did revive the 2d and 3d sections of the Rev. Sts. *c.* 47, and that the provisions of those sections were in force at the time of the offences charged in the indictment ; and that the conviction was right.

*Exceptions overruled.*

After the above opinion was given, the defendant filed a motion in arrest of judgment, on the ground that no offence was set forth in the indictment, as it was not alleged that the quantity of liquor sold by the defendant, was less than twenty-eight gallons.

In support of this moti n, was cited *Commonwealth* v. *Odlin*, decided in Essex, November, 1839. 23 Pick. 275.

The defendant also moved for a new trial, that he might have the benefit of showing, in his defence, that he had been licensed as a taverner, although the indictment alleges the contrary. And he produced a certificate, in due form, that he, on the 21st of April, 1839, was licensed by the county commissioners " to sell wine, beer, ale, cider, or any other fermented liquors, and not to sell brandy, rum, or any other spiritous liquors." He alleged, that he was prevented by accident, and the absence of his counsel, from producing this certificate at the trial, and thereby disproving the allegation, in the indictment, that he was not duly licensed, according to law, as an innholder, &c.

These motions were argued at Boston, on the 28th of January, 1841, by the same counsel, and at the succeeding February term in this county, the opinion of the court thereon was pronounced by

WILDE, J. There is no ground for the motion in arrest of judgment. The indictment is founded on the 2d section of the 47th chapter of the revised statutes, which forbids any person to sell wine or spiritous liquor to be used in or about his house or other buildings, without being duly licensed as an innholder or common victualler. Under this section, it is immaterial what quantity is sold to be so used

It appears from the exceptions, which were overruled at the

last term, that the defendant's counsel supposed that this indictment was on the 3d as well as the 2d section of the 47th chapter. But it is not so. If it were on the 3d section, there would be good ground for the motion ; as was decided in *Odlin's case.*

The motion for a new trial must also be denied. We need not decide whether the qualified license, now produced by the defendant, would have availed him to defeat the indictment in its present form, if he had produced it in evidence, on the trial. It is sufficient ground to overrule the motion, that the said license did not authorize the defendant to do the acts of which he was accused and found guilty ; and that he neglected to bring it forward at the proper time, for the purpose of raising the question as to this supposed defect of form in the indictment. No purpose of justice would be promoted by granting the motion ; nor does the motion come within any rule by which the granting of new trials is regulated. The defendant has been convicted on the merits, and makes no suggestion that the evidence against him was inadmissible, or that he can control it by evidence since discovered by him. Where a conviction is manifestly right, on the facts and the law applicable thereto, it would be a perversion of justice to allow a defendant to avoid sentence by interposing a mere matter of form, of which he might have availed himself at the proper time. See 1 Stark. Crim. Pl. (2d ed.) 357. 1 Chit. Crim. Law, 655 – 657.

*Both motions overruled.*